UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PAUL CARNEY,<br><br>                Plaintiff,<br>    v.<br><br>C. WARNER, *et al.*,<br><br>                Defendants. | No. C08-5653 BHS/KLS<br><br>**REPORT AND RECOMMENDATION**<br>**Noted for: February 19, 2010** |

Before the Court is the motion for summary judgment of Defendant C. Warner. Dkt. 37. Defendant Warner originally filed a Rule 12(b)(6) motion to dismiss on September 23, 2009. Dkt. 30. On October 14, 2009, Plaintiff Paul Carney filed his response. Dkt. 34. On November 23, 2009, the court converted the motion to dismiss to a motion for summary judgment and issued a revised briefing schedule. Dkt. 35. Defendant Warner filed her motion for summary judgment and supporting declaration on December 10, 2009. Dkts. 37 and 38. On January 6, 2010, Defendant Warner filed a reply and supporting declaration. Dkts. 40 and 41. Mr. Carney did not file a response to the newly filed motion for summary judgment.

Having carefully reviewed the motion and balance of the record, and viewing the evidence in the light most favorable to Mr. Carney, the undersigned recommends that the Defendants' motion for summary judgment be granted on the grounds that Mr. Carney's claims are barred by the applicable statute of limitations.

REPORT AND RECOMMENDATION - 1

# FACTUAL BACKGROUND

The following background summary and recitation of facts is based on the verified complaint, and the declarations and exhibits filed in support of Defendants' motion, which are not disputed by Plaintiff.

**A.     Procedural Background and Plaintiff's Allegations**

Mr. Carney initially filed this Section 1983 lawsuit in the United States District Court for the Eastern District of Washington ("Eastern District") on September 22, 2008. Dkt. 1; Dkt. 32, ¶ 5. Defendant Warner was named as a defendant but was not served with a summons or complaint in that action. Dkt. 32. On October 6, 2008 the Eastern District, on its own motion, issued an order requiring Mr. Carney to amend or voluntarily dismiss his complaint. Dkt. 3. Mr. Carney voluntarily dismissed one defendant and the Eastern District transferred his remaining claims to this court. Dkt. 5. On November 12, 2008, Mr. Carney was ordered to amend his complaint or show cause why it should not be dismissed for failure to state a claim. Dkt. 7. Mr. Carney's Amended Complaint was filed on February 20, 2009. Dkt. 11. Defendant Warner was served with the Amended Complaint on April 15, 2009. Dkt. 32, ¶ 6, Dkt. 19.

As to Defendant Warner, Mr. Carney alleges that on August 23, 2005, he was ordered to sign a behavior contract that violated his First Amendment rights because he claims it prohibited him from complaining about the program or anything else, including his lack of medical treatment. Dkt. 11, p. 3. Mr. Carney further alleges that on August 11, 2005, Defendant Warner refused to change his work schedule so that he could participate in the exercise part of his medical treatment. *Id.* In addition, he claims that the contract he was ordered to sign was altered from the standard thirty days to nine months, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. *Id.*

REPORT AND RECOMMENDATION - 2

Dkt. 37, pp. 2-6. Finally, Mr. Carney alleges that on September 16, 2005, he was transferred to Washington Corrections Center (WCC), just three days prior to his Drug Offender Sentencing Alternative (DOSA) revocation hearing. *Id.* Mr. Carney claims that the transfer violated his Fifth and Fourteenth Amendment rights because it hindered his ability to call witnesses on his behalf. *Id.*; Dkt. 34, p. 2.

**B.     Background Facts**

    **1.     Drug Charge Conviction and DOSA Sentencing**

Mr. Carney was convicted on a drug charge and was given a DOSA sentence. Dkt. 31, ¶ 3; Dkt. 31, Exh. 1. DOSA status generally requires an inmate to participate in a chemical dependency treatment program while incarcerated, once the inmate has been assessed and determined to be chemically dependent. *Id.*, ¶ 4. If the offender complies with the program requirements, he is entitled to an early release date. *Id.* Conversely, if an inmate does not comply with chemical dependency program requirements, his DOSA status will be revoked and he will not benefit from an early release date. *Id.*

Mr. Carney admits that he was a DOSA offender and that he was required to participate and complete a chemical dependency program as a condition of his DOSA status and sentence. Dkt. 38, Exh. A, Request Nos. 1 and 4. He also admits that he agreed to fully participate in all required substance abuse programs, although he asserts that he was not placed into the program for which he had been assessed. *Id.*, Request No. 5.

    **2.     Chemical Dependency Treatment Agreement**

Mr. Carney signed and dated a DOSA agreement and an "Affirmation of Chemical Dependency" on June 17, 2003. Dkt. 31, Exh. 2. Mr. Carney agreed to "fully participate in all required substance abuse treatment programs." *Id.*

REPORT AND RECOMMENDATION - 3

### 3. Participation in the Integrity Program at LCC

Mr. Carney was incarcerated at the Larch Corrections Center (LCC) from May 20, 2005 to September 14, 2005. Dkt. 31, ¶ 5. He was a participant in the Integrity program at LCC from his intake on May 20, 2005 through August 26, 2005. *Id.*, and see Exh. 3. Upon his arrival at LCC on May 20, 2005, Mr. Carney signed an agreement detailing the participation requirements and terms and conditions of the chemical dependency program he was required to fulfill while incarcerated at LCC. *Id.*, ¶ 6; Exh. 4. The chemical dependency Treatment Participation Expectations agreement provides in part:

> Those offenders sentenced under the Drug Offender Sentencing Alternatives (DOSA) SHALL:
>
> 1. Sign the DOSA agreement (DOC 20-260)
> 2. Complete primary treatment and a minimum of three (3) months of outpatient treatment upon release from total confinement; and
> 3. Sign your dated signature below indicating that you understand what is expected of you as a DOSA offender, and that if you are unsuccessfully discharged from any level of Chemical Dependency treatment, DOC may revoke your DOSA sentence and require you to serve the remainder of your sentence as imposed by the sentencing court.

*Id.*

### 4. Behavior Contract

Mr. Carney signed a behavior contract on May 20, 2005 when he arrived at LCC. Dkt. 31, ¶ 7 and see Exh. 5. Mr. Carney entered the Integrity program at LLC on a behavior contract due to his infractions and violations while a participant in the Legacy program at his prior institution, Coyote Ridge Corrections Center (CRCC). *Id.*, ¶ 8. After a hearing at CRCC, Mr. Carney was found guilty of a "557" infraction – a "failure to program" pursuant to WAC 137-25-030. In other words, he was noncompliant with program requirements and refused to participate

REPORT AND RECOMMENDATION - 4

while still at that institution. *Id.* His noncompliance just prior to transfer from CRCC to LCC is the reason he was put on a behavior contract immediately upon arrival at LCC.

A behavior contract is an agreement between the inmate, a representative of DOC and a representative of the chemical dependency program. Dkt. 31, ¶ 7. The purpose of the behavior contract is to hold an inmate accountable for his or her actions and to impart a heighted sense of self-awareness. *Id.* The contract is generally entered into after the inmate has already broken program rules on numerous occasions *Id.* Mr. Carney maintained compliance with all of the terms and conditions of the May 20, 2005 behavior contract, which ended on June 20, 2005. *Id.*

### 5. Refusal to Participate in Integrity Program

Throughout the month of August 2005, Mr. Carney was demonstrating negativity, a lack of sincere participation, and defiance toward the Integrity program and program activities. Dkt. 31, ¶ 9. At a meeting with Integrity staff members regarding his behavior on August 26, 2005, Mr. Carney was asked to sign another behavior contract. *Id.* He refused to sign and requested to be removed from the Integrity program. *Id.* He told Integrity staff members "Stop right now. I am not signing a behavior contract. I want out . . . I'm done." *Id.* Mr. Carney admits that he refused to sign a second behavior contract and that he told Integrity staff members that he was "done" with the program and wanted out, and also stated that he believed the contract violated his civil rights and was cruel and unusual punishment. Dkt. 38, Exh. A, Request No. 9. Because of his refusal to participate in the Integrity program, Mr. Carney was issued a "762" infraction and automatically referred to DOC for a hearing to determine revocation of his DOSA status.

REPORT AND RECOMMENDATION - 5

### 6. Revocation of DOSA Status

After the meeting with Integrity staff members on August 26, 2005, Mr. Carney was immediately placed in the secured housing unit by the Department of Corrections personnel at LCC to await his hearing regarding DOSA revocation. Dkt. 31, ¶ 11. DOC transferred Mr. Carney out of LCC to Washington Corrections Center (WCC) in Shelton, Washington on September 14, 2005. *Id.* A DOSA revocation hearing was held by DOC at WCC and Mr. Carney's DOSA status was revoked. *Id.* All DOSA revocation hearings are held at WCC in Shelton Washington. Dkt. 31, ¶ 12.

### 7. Transfer to WCC

Ms. Carney has no control over decisions regarding the location of inmates, their level of confinement, the decision to transfer them, the date of transfer and other confinement related issues. Dkt. 31, ¶ 12. She has no control over offender sentencing. *Id.*

Mr. Carney admits that he left LCC on September 13, 2005. Dkt. 38, Exh. A, Request No. 10. Mr. Carney further admits that he filed the instant lawsuit against Defendant Warner on February 20, 2009. Dkt. 38, Exh. A, Request No. 11. However, a review of the court file shows that C. Warner was named in the initial complaint filed in the Eastern District of Washington on September 22, 2008 and that the initial complaint alleged similar allegations against Defendant Warner.

## STANDARD OF REVIEW

Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding whether summary judgment should be granted, the court must view the record in the light most favorable to the nonmoving party and

indulge all inferences favorable to that party. Fed. R. Civ. P. 56(c) and (e). When a summary judgment motion is supported as provided in Fed. R. Civ. P. 56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in Fed. R. Civ. P. 56, must set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e). If the nonmoving party does not so respond, summary judgment, if appropriate, shall be rendered against that party. *Id.*

The moving party must demonstrate the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some 'significant probative evidence tending to support the complaint.'" *Id.* (quoting *Anderson*, 477 U.S. at 290); see also *California Architectural Building Products, Inc.*, 818 F.2d at 1468 ("No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment."). In other words, the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990).

REPORT AND RECOMMENDATION - 7

"A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001).

## DISCUSSION

Defendant Warner moves for dismissal of Mr. Carney's claims against her because (1) the claims are barred by the applicable statute of limitations, (2) Mr. Carney has failed to state a claim under 42 U.S.C. § 1983, (3) there is no evidence that Plaintiff's constitutional rights under the First, Eighth, Fifth and Fourteenth Amendments were violated, and (4) Ms. Warner did not personally participate in the revocation of Mr. Carney's DOSA. Dkt. 37, p. 6.

Mr. Carney did not address the statute of limitations in his response to Defendant's motion to dismiss. Dkt. 34. Defendant Warner raised the same issue in her motion for summary judgment (Dkt. 37), but Mr. Carney did not file a response to the converted motion.

As explained further below, after considering the record and all inferences in the light most favorable to Mr. Carney, the court finds that his claims are barred by the applicable statute of limitations. Thus, the Court need not consider the substantive grounds for dismissal.

**A.  Statute of Limitations**

The Civil Rights Act, 42 U.S.C. § 1983, contains no statute of limitations. As such, the statute of limitations from the state cause of action most like a civil rights act is used. In Washington, a plaintiff has three years to file an action. *Rose v. Rinaldi*, 654 F.2d 546 (9th Cir 1981). The Washington statute for personal injury reads as follows:

> The following actions shall be commenced within three years: . . . (2) An action for taking, detaining, or injury personal property, including an action for the

REPORT AND RECOMMENDATION - 8

specific recovery thereof, or for any other injury to the person or rights of another not hereinafter enumerated.

RCW 4.16.080(2) (emphasis added).

Federal law determines when a civil rights claim accrues. *Tworivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). A claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996); see also *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001), quoting *Tworivers*, 174 F.3d at 992. The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful. *Abramson v. Univ. of Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979).

Mr. Carney's complaint reveals that he had actual notice of the facts giving rise to a claim in sufficient time to commence an action before the expiration of the three year statute of limitations. Mr. Carney alleges that the events for which he brought his lawsuit occurred on August 23, 2005, when he was ordered to sign a behavior contract; on August 11, 2005, when Defendant Warner allegedly refused to change his work schedule; and, on September 16, 2005, when he was transferred to WCC. Dkt. 11, p. 3. Ms. Warner is the only named defendant who was a CiviGenics employee at LCC during the time of the events related to Plaintiff's claims in this matter. Dkt. 31, ¶ 2. Thus, any and all acts alleged by Mr. Carney against Ms. Warner would have had to occur during his incarceration at LCC from May 20, 2005 through September 13, 2005. *Id.*, at 5; Dkt. 38, Exh. A, Request No. 10.

Mr. Carney initially filed this Section 1983 lawsuit in the Eastern District on September 22, 2008. Dkt. 1. Defendant Warner was not served with a summons or complaint in that action (Dkt. 32) prior to the time Mr. Carney's lawsuit was transferred from the Eastern District.

REPORT AND RECOMMENDATION - 9

Therefore, the Eastern District never acquired personal jurisdiction over her. More importantly, however, at the time Mr. Carney filed his lawsuit in the Eastern District, the statute of limitations had already lapsed as to any claims against Ms. Warner, as that action was not filed until September 22, 2008 – at least three years and thirty-four days after Mr. Carney was terminated from the Integrity program on August 26, 2005, and three years and eight days after Mr. Carney was transferred from LCC. Dkt. 37, p. 9.

Following transfer of his claims to this Court, Mr. Carney filed an Amended Civil Rights Complaint on February 20, 2009. Dkt. 11. Defendant Warner was served with the Amended Complaint on April 15, 2009. Dkt. 32, ¶ 6, Dkt. 19. However, as noted above, his claims against Defendant Warner for alleged conduct in August and September of 2005, had already expired. Additionally, the summary judgment evidence reflects that Ms. Warner was not involved in Mr. Carney's transfer and has no control over inmate transfers, and that all DOSA revocation hearings are held at WCC. Dkt. 31, ¶ 12.

Thus, after viewing the facts in the light most favorable to Mr. Carney, the undersigned finds that his claims are barred by the statute of limitations and further, that there is no evidence of circumstances indicating that the statute should be equitably tolled.

**B.      Equitable Tolling**

In § 1983 actions, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws are inconsistent with federal law. *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999); see also *Board of Regents of University of State of N.Y. v. Tomanio*, 446 U.S. 478 (1980).

The doctrine of equitable tolling prevents a defendant from asserting the statute of limitations when a defendant's actions have fraudulently, deceptively or in bad faith induced plaintiff to delay commencing suit until the applicable statute of limitations has expired. *Del Guzzi Constr. Co., Inc. v. Global Northwest Ltd., Inc.*, 719 P.2d 120 (1986). For the doctrine of equitable tolling to be applicable, a defendant must have actively concealed or misrepresented facts, or otherwise interposed a hindrance or impediment that prevented plaintiff from discovering or suing on the claim. *Wood v. Gibbons*, 685 P.2d 619, review denied, 103 Wn.2d 1009 (1984). In addition, a defendant is not equitably estopped from raising a statute of limitations defense when the plaintiff had actual notice of the facts giving rise to a claim in sufficient time for the plaintiff to commence an action before the expiration of the statute period. *Helgeson v. City of Marysville*, 881 P.2d 1042 (1994).

Based on a review of the record, the undersigned finds that equitable tolling does not apply to the facts of this case. Mr. Carney offers no explanation at all for why he waited over three years before bringing this action against Defendant Warner.

## CONCLUSION

For the foregoing reasons, the undersigned recommends that Defendant Warner's motion for summary judgment (Dkt. 37) be **GRANTED** and that Plaintiff's claims be dismissed with prejudice as they are barred by Washington's three-year statute of limitations.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the

REPORT AND RECOMMENDATION - 11

time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **February 19, 2010,** as noted in the caption.

DATED this 25th day of January, 2010.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12